IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Metal Chem, Inc., | ) | |
| | ) | C/A No. 6:14 -4039-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Ronatec C2C, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion to dismiss or alternatively transfer filed by Defendant Ronatec C2C, Inc. ("Ronatec"). (ECF No. 6). Plaintiff Metal Chem, Inc., ("Metal Chem") filed a response opposing the motion (ECF No. 9) and Ronatec filed a reply (ECF No. 10). For the reasons below, the court grants the motion in part.

### I. Background/Procedural History

Metal Chem is a South Carolina corporation with its principal place of business in South Carolina. (Compl. ¶ 1). Ronatec is a California corporation with its principal place of business in California. (Compl. ¶ 2). Metal Chem manufactures chemical products and, from 2008 until 2014, Ronatec purchased electroless nickel and other chemical products from Metal Chem which Ronatec then sold to its customers.

In its Complaint, Metal Chem alleges claims of trademark infringement, violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 et. seq., and breach of contract. Ronatec has filed this motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ. P. 12(b)(2), or alternatively to transfer the action to the Southern District of California pursuant to 28 U.S.C. § 1404(a).

## II. Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is properly challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (*citing Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If the court rules on the motion without conducting an evidentiary hearing and relies solely on the basis of the pleadings, allegations in the complaint, motion papers, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst of Md.*, 334 F.3d at 396. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Id*.

Personal jurisdiction may be general or specific. General jurisdiction requires the Defendants' "continuous and systematic" contacts with the forum state. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). Specific jurisdiction requires that the defendant's "contacts relate to the cause of action and create a substantial connection with the forum state." *Id.*

A federal court may exercise personal jurisdiction over a non-resident "corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting. Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir.2009). Because South Carolina courts construe the South Carolina long-arm statute to extend to the outer reaches of the Fourteenth Amendment, the court's statutory inquiry merges with its constitutional inquiry. *See, e.g., Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C.2005). Under the

constitutional inquiry, a court has personal jurisdiction over those persons with "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs*, 561 F.3d at 277 (internal quotation marks omitted). A defendant has sufficient minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson,* 444 U.S. 286,  297 (1980).

Specific jurisdiction is more narrow and exists when the suit arises out of, or is related to, the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A., v. Hall,*, 466 U.S.  408, 414 & n. 8. In determining whether the due process requirements for specific personal jurisdiction exist, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002) (internal quotation marks omitted).

### III. Discussion

**A.  Personal Jurisdiction**

Ronatec alleges it does not have sufficient minimum contacts with South Carolina to subject it to this court's jurisdiction and the court should dismiss this action.  Alternatively, Ronatec requests that this action be transferred to California where it resides or where a substantial part of the events giving rise to the Complaint occurred or a substantial part of the property which is the subject of the Complaint is located.  In its response, Metal Chem argues Ronatec has continuously and systematically purchased products made and sold in South Carolina and each of the causes of actions it alleges in its Complaint stem from these purchases.

Metal Chem also argues a transfer to another jurisdiction would be inappropriate.

### I. General Jurisdiction

In its Complaint, Metal Chem asserts nine causes of action, including trademark infringement violations, South Carolina Unfair Trade Practices Act violations, S.C. Code Ann. § 39-5-10, et. seq., and breach of contract. Ronatec alleges it does not have systematic and continuous contacts with South Carolina to support the exercise of general jurisdiction over it in South Carolina. Ronatec alleges it has no physical presence in South Carolina, is not registered to do business in South Carolina and has never owned or leased office space or other property in South Carolina, had agents or employees located in South Carolina, marketed or promoted its products in South Carolina, maintained a South Carolina bank account, had an agent for service of process in South Carolina, had any officers or directors who lived in South Carolina, had a South Carolina mailing address or telephone listing, or paid taxes in South Carolina. (Def.'s Mot. to Dismiss at 7, Wetherald Decl. ¶6). Moreover, Ronatec argues that all of the meetings it had with Metal Chem took place outside of South Carolina, and that merely purchasing products from Metal Chem does not satisfy the minimum contacts requirement. (Def.'s Mot. to Dismiss at 7-8).

Here, there is a lack of many of the factors traditionally associated with a physical presence in the forum state, such as an official agent, employees, a business license, incorporation, or corporate facilities, which would support the existence of general jurisdiction. Metal Chem has not alleged that Ronatec has such continuous and systematic contacts with the forum state justifying general personal jurisdiction, nor can the court find such contacts in the record. Accordingly, the court turns to the three part test set out above to determine if specific jurisdiction is proper.

4

**ii. Specific Jurisdiction**

As stated above, in determining whether the exercise of specific personal jurisdiction is appropriate, the court weighs "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc.*, 293 F.3d at 712 (internal citations and quotation marks omitted).

Metal Chem has alleged multiple causes of action against Ronatec arising out of their business relationship. Ronatec argues that eight of Metal Chem's nine causes of action allege common law trademark infringement or unfair business practices stemming from trademark infringement which did not take place in South Carolina. Moreover, Ronatec alleges that Metal Chem's breach of contract claim also does not support specific jurisdiction because the parties never executed a formal, written contract and further that the fact that the parties entered into agreements over the course of six years does not establish personal jurisdiction. Moreover, Ronatec alleges that the performance of the contracts occurred in California or other western states, but not in South Carolina. And except for two occasions, the products were shipped out of South Carolina.

Ronatec also contends that exercising personal jurisdiction over it in South Carolina would offend the traditional notions of fair play and substantial justice set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Ronatec argues that because the alleged trademark infringement activity took place in California or states close to California, the evidence and witnesses are located in California or close to California, and Ronatec would be forced to try a case in a foreign jurisdiction where it has no contacts against a company located in that jurisdiction where it has many contacts.

As to specific jurisdiction, ordinarily a contract with a South Carolina party cannot alone establish sufficient minimum contacts in South Carolina. *Wells American Corp. v. Sunshine Electronics*, 717 F.Supp. 1121, 1126 (D.S.C.1989) ( "it is well established that an 'individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum.' ") (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The court must look to other factors such as: (1) who initiated the agreement; (2) where the negotiations occurred; (3) the extent of communication; (4) where the agreement was executed; and (5) where the agreement was to be performed. *Masselli & Lane, PC v. Miller & Schuh, PA*, 2000 WL 691100 (4th Cir. May 30, 2000) (internal citation omitted). Moreover, "[c]ourts frequently have distinguished between buyer and seller in applying long-arm statutes. Jurisdiction has more often been assumed over non-resident sellers than over non-resident buyers." *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 232 (6th Cir.1972) (citations omitted). This distinction exists as a "short-hand means of expressing the differences between passive and active involvement in a transaction." *Id.* at 233.  However, "[t]o the extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears." *Id.*

The final prong of the three-part test requires the court to determine whether jurisdiction is constitutionally reasonable.  In making this determination, the court evaluates "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477. "More

6

generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (internal quotation marks omitted).

Here, the record indicates that Metal Chem initiated the contact with Ronatec, the negotiations took place in California, and Ronatec was merely a passive purchaser. It is unreasonable to conclude that Ronatec could have foreseen that it could be haled into a South Carolina court. Accordingly, the court finds that Ronatec did not avail itself of the privileges of conducting activities in South Carolina and that exercising personal jurisdiction over Ronatec in South Carolina would offend the traditional notions of fair play and substantial justice set forth in *International Shoe*.

Finally, the court finds that the effects test also does not provide personal jurisdiction. In cases involving intentional torts, the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), set out the "effects test."[1] To establish specific jurisdiction under the effects test, the plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in a forum that can be said to be the focal point of the harm; and (3) the defendant expressly aimed tortious conduct at the forum in a manner that the forum can be said to be the focal point of it. *Consulting Eng'rs,* 561 F.3d at 280. The Fourth Circuit has interpreted the effects test narrowly. *See ESAB Grp., Inc. v. Centricut, Inc.,* 126 F.3d 617, 626 (4th Cir.1997). Merely feeling the effects of out-of-state conduct "does not supplant the minimum

---

[1] In *Calder*, the Court held that a California court could constitutionally exercise jurisdiction over a Florida citizen whose only material contact with California was to write a libelous story, directed at a California resident for a publication circulated in California, knowing that the injury would be felt by the California resident in her state.

7

contacts analysis," and " '[a]lthough the place the plaintiff feels the alleged injury is plainly relevant . . ., it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.' " *Consulting Eng'rs,* 561 F.3d at 280-81 (quoting *ESAB Grp.*, 126 F.3d at 626). Furthermore, "the defendant [must] have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.* (internal citation omitted).

In *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002), the Fourth Circuit refused to exercise jurisdiction over a Connecticut newspaper whose allegedly defamatory articles about a Virginia prison warden were posted on a website accessible to Virginia residents. The court reiterated and reinforced the applicability of the effects test, but noted that the "[defendant] must, through the Internet postings, manifest and intend to target and focus on [the forum state] . . . something more than posting and accessibility is needed . . . ." *Id.* That a plaintiff suffers harm from an intentional tort, while important, is not in and of itself sufficient to allow an exercise of jurisdiction by a court in the plaintiff's forum; constitutional protections demand "something more." *Id.* The Fourth Circuit has not clarified exactly what constitutes "something more," but the Seventh Circuit has addressed this issue:

> "in *Calder* as in all other cases . . . the defendant had done more than brought about an injury to an interest located in [the forum] state. The defendant had also entered the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material."

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir. 1994).

Here, the first element of the effects test is satisfied because trademark infringement is an intentional tort. *Gnossos Music v. Mitken, Inc.,* 653 F.2d 117, 120 (4th Cir.1981) (stating that "copyright infringement is a tortious interference with a property right for which Congress

8

created the remedy for damages"). Traditionally, 'the tortious wrong of trademark infringement takes place in either the place where the infringer commits acts of infringement or in the place where customers are likely to be deceived and confused.' " *Music Makers Holdings*, LLC, 2010 WL 2807805, at *1 (internal citations omitted).

Moreover, as to the last prong of the effects test, the court concludes that South Carolina was not the focal point of the alleged tortious activity. While Ronatec knew that Metal Chem was a South Carolina corporation, Ronatec did not expressly aim its alleged tortious actions at South Carolina. *See Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir.2002) (declining to exercise personal jurisdiction over nonresident defendants who published an allegedly defamatory online article about the Virginia plaintiff, even though the defendants "were all well aware" that the plaintiff was employed and resided in Virginia, and that any harm suffered by plaintiff would primarily occur in Virginia). Based on the foregoing, Metal Chem has not shown that Ronatec expressly targeted South Carolina. Accordingly, the court concludes that it does not have specific personal jurisdiction over Ronatec.

Although the court finds that it does not have personal jurisdiction over Ronatec, the court declines to dismiss the action. Pursuant to 28 U.S.C. § 1406(a), this court has discretion to transfer this action if it is in "the interest of justice." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005) (stating "Section 1406(a) has been construed to permit transfers where personal jurisdiction is lacking in the transferor court, but would be available in an alternative forum" (citation omitted)).[2] Under 28 U.S.C.A. § 1391(b), an action may be brought in: 1) a judicial district where any defendant resides, if all defendants reside in the same State,

---

[2] Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought ." 28 U.S.C. § 1406(a).

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C.A. § 1391(b). As Ronatec is located in California and a substantial part of the events giving rise to Metal Chem's claims occurred in California, the court finds the interests of justice warrant transferring this matter to the Southern District of California.

### IV. Conclusion

Accordingly, based on the foregoing, the Defendant Ronatec's Motion to Dismiss (ECF No. 6) is **GRANTED in part**, and this action is transferred to the Southern District of California.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
March 9, 2015